C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ADIL KHALIL,              :
                          :
            Plaintiff,    :    **MEMORANDUM DECISION AND**
                          :    **ORDER**
      - against -         :
                          :    24-cv-4823 (BMC)
CITY OF NEW YORK, *et al.*, :
                          :
            Defendants.   :
----------------------------------------------------------- X

**COGAN**, District Judge.

On December 15, 2025, the Court granted summary judgment to defendants and dismissed this case. Plaintiff *pro se* now moves for reconsideration of that Order under Federal Rule of Civil Procedure 59(e). He contends that "the action was dismissed before [he] was afforded a meaningful opportunity to identify" the John Doe police officers. That is simply not true. For that reason and others, plaintiff's motion is denied.

Plaintiff's complaint is summarized in the Court's December 15, 2025 Memorandum Decision and Order. On the evening of February 10, 2023, plaintiff was beaten and robbed at a bar in Jamaica, Queens. Plaintiff allegedly went to the 103rd Precinct of the NYPD to file a police report. There, officers pushed him to the ground, handcuffed him and, with the help of EMTs, transported him to a hospital against his will. Once plaintiff arrived at the hospital, nurses injected him with antipsychotic drugs and deprived him of his glaucoma medication. Plaintiff sued the City of New York (the "City"), the police officers, the EMTs, NYC Health & Hospital ("NYCHH"), and the nurses for constitutional and other violations.

When plaintiff filed his complaint on June 24, 2024, plaintiff was unaware of the identities of the police officers, EMTs, and nurses who allegedly harmed him. Therefore, after the Court granted plaintiff's *in forma pauperis* motion, Magistrate Judge Bloom ordered the Corporation Counsel of the City of New York to ascertain the full names and service addresses of the police officers, EMTs, and nurses involved pursuant to <u>Valentin v. Dinkins</u>, 121 F.3d 72 (2d Cir. 1997). Eventually, NYCHH identified the nurses and the City identified the EMTs.

On December 5, 2024, the City requested relief from the Court's <u>Valentin</u> Order with respect to the police officers, explaining that following a diligent two-and-a-half month search in which it "pursued and exhausted every available lead and source of information," it had been unable to identify the purported officers described in the complaint. Among other things, the City "reviewed the 103rd Precinct's February 10, 2023 and February 11, 2023 roll calls and command logs; bodycam footage from officers who were present at the 103rd Precinct on February 10, 2023 and February 11, 2023 and given hospital assignments; and the activity logs from virtually every officer who was likely to be present at the 103rd Precinct during the time in question," and "interviewed ten NYPD members from the 103rd Precinct, ... all of whom stated they have *no recollection or record of any event occurring like the one described by [p]laintiff*." (Emphasis added). A sergeant, two captains, and a lieutenant who the City interviewed noted that the absence of records in the command logs "strongly suggests that the events described in [p]laintiff's [c]omplaint are inaccurate."

The City went on to explain that the following facts "heightened" the probability of inaccuracy:

> (1) According to the prehospital care report summary, the FDNY EMTs who arrived at the 103rd Precinct found Plaintiff "sitting on a bench inside the [103rd Precinct]," where Plaintiff "stated, 'I wanna go to the hospital [sic].'"

2

(2) According to EMT Mattia, one of the responding FDNY EMTs, he "almost always notes the presence of an NYPD officer" in the Report Summary if one accompanies a patient in the ambulance.

(3) According to Lt. Jenkins, the only time the 103rd Precinct has an officer ride in an ambulance with EMTs is when an individual is combative; and where that is the case, there would "absolutely be a note of it" in that day's command log or some other report.

(4) None of the officers interviewed had any body camera footage or entries in their activity logs concerning the events Plaintiff alleges in his Complaint.

(5) According to Lt. Jenkins, the precinct doors "are never locked," which Plaintiff suddenly alleges was the case in his Opposition to Defendants' Motion to Dismiss.

Additionally, although NYCHH had "no record" of an officer bringing plaintiff to the hospital, NYCHH staff members recalled that plaintiff was escorted out of the hospital by NYCHH Police and not by an NYPD officer.

Magistrate Judge Bloom granted the City's motion and relieved the City of further Valentin obligations, noting that courts may decline to issue Valentin orders "where a defendant is unable to identify the relevant parties based on the information a plaintiff has provided." Lurch v. Doe Officers, No. 22-cv-2324, 2022 WL 17617837, at *1-2 (E.D.N.Y. Dec. 13, 2022). Judge Bloom also found that the City had reasonably complied with the Valentin Order.

As is quite clear from the record, plaintiff was *not* "denied the limited discovery or court-directed assistance necessary" to identify the John Doe officers. The City could not identify the officers despite its most diligent efforts and, in fact, provided compelling evidence that the events involving the police officers did not actually occur.[1] After Judge Bloom relieved the City

---

[1] Additional factors supported this alternative finding. For one, the complaint raised red flags of implausibility. In addition to plagiarizing pleadings and briefs from other cases, e.g., Greene v. City of New York, No. 21-cv-5762 (S.D.N.Y. Apr. 20, 2023) (Dkt. 155), plaintiff made strikingly (and suspiciously) similar claims to ones he had made in prior lawsuits, e.g., Khalil v. City of New York, No. 17-cv-1729, 2019 WL 1597315, at *1 (E.D.N.Y. Apr. 15, 2019). Second, the Court had good reason to doubt plaintiff's credibility: plaintiff is a serial litigant who is subject to

3

of its <u>Valentin</u> obligations with respect to the officers, the ball was in plaintiff's court. But plaintiff sat on his hands and only now complains that the <u>Valentin</u> process was inadequate – it's no wonder why.

   Additionally, plaintiff's frustration that the Court converted defendants' motions to dismiss into motions for summary judgment is disingenuous: plaintiff had unequivocal notice that defendants' motions to dismiss could be converted to motions for summary judgment and of the consequences of such conversion. On three occasions, defendants provided plaintiff with a "Local Rule 12.1 Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings." These notices explained that defendants had submitted additional written material in support of their motion to dismiss; that this Court could elect to treat the motions to dismiss as motions for summary judgment; that plaintiff had to submit documentary evidence or witness statements to counter the material submitted by the defendants and could not merely rely on the allegations in his complaint; and that failure to submit such evidence could result in the Court accepting the facts asserted by the defendants as true and dismissing the case without a trial. Presumably having received, reviewed, and understood these 12.1 notices, plaintiff submitted material outside the complaint with his oppositions to the defendants' motions and said that that he was doing so "in support of his motion for summary judgment." Finally, to obviate any doubts as to the sufficiency of notice, the Court explicitly told plaintiff in an Order that it would be converting defendants' motions to dismiss into motions for summary judgment and directed him to file any additional evidence that he wanted the Court to consider within two weeks of that Order. In fact, when the Court entered its decision granting

---

an anti-suit injunction dated September 18, 2019 as a result of the number of frivolous actions he has brought in this Court.

4

summary judgment, five weeks had passed. In those five weeks, plaintiff filed nothing: not an objection to conversion, not additional evidence – nothing.

To succeed on a motion for reconsideration under Rule 59(e), the moving party must "point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "A motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr., 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and quotation omitted). None of these reasons are present in this case.

## CONCLUSION

For the foregoing reasons, the Court denies plaintiff's motion for reconsideration.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
January 28, 2026

5